**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**DANNY A. PICKENS,**

      **Petitioner,**

      **v.**

**WARDEN, ROSS
CORRECTIONAL INSTITUTION,**

      **Respondent.**

      **CASE NO. 2:15-CV-2305
JUDGE JAMES L. GRAHAM
Magistrate Judge Elizabeth A. Deavers**

**REPORT AND RECOMMENDATION**

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the *Petition*, Respondent's *Return of Writ*, Petitioner's *Reply and Traverse*, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

**Facts and Procedural History**

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of the case as follows:

> Related to acts that occurred on May 16, 2013 at the residence of Tameka Ervin, appellant was indicted on May 24, 2013 for aggravated burglary, a first-degree felony, in violation of R.C. 2911.11, violation of a protection order, a third-degree felony, in violation of R.C. 2919.27, and domestic violence, a fourth-degree felony, in violation of R.C. 2919.25. The matter proceeded to a jury trial where the following evidence was adduced.
>
> Ervin testified that she has six children and appellant is the father of the three youngest. According to Ervin, she met appellant in 2010, and the two lived together off and on until January 2012, at which time there was an incident that resulted in appellant being convicted of domestic violence against Ervin. Also in connection with the January 2012 incident, a protection order was granted in favor of Ervin and against appellant. The protection order was to

remain in effect until January 25, 2017. According to Ervin, since the time of the incident in January 2012, she and appellant have conversed over the phone about the children, but she has only seen appellant on two occasions, once at the hospital when their son had surgery and once at the hospital for the birth of their daughter.

Regarding the events of May 16, 2013, Ervin testified that she heard "several hard knocks" on her front door and, when she did not answer, there were "13 kicks" and then the door came down "frame and all." (Tr. 31, 34.) Appellant then entered the house and began chasing Ervin with a hammer while "[s]creaming, yelling, [and] cussing" at Ervin and saying things such as "[y]ou fat bitch, I told you you was going to die by my hands," and "[b]itch, I'm going to kill you." (Tr. 41–42.) All the while Ervin was holding the baby and calling 9–1–1. Ervin testified that at one point appellant caught up to her and smacked her in the face with an open hand. Appellant became unsteady, and Ervin was able to run out of the house and yell for her kids to get out of the house. Ervin went to a neighbor's house, and appellant "proceeded to walk down the street waving the hammer in his hand, yelling and cussing and screaming." (Tr. 51.) When police arrived, Ervin told them she had a protection order against appellant and what had just occurred. According to Ervin, in the days following this incident, appellant left several voicemail messages for Ervin. In one, appellant stated "I'll be gone for about 90 days, and when I get back, you know what it is," which Ervin took as a threat. (Tr. 53.)

Ervin's neighbor, Devonta Taylor, testified that on May 16, 2013, he saw appellant go onto Ervin's porch and knock on the door. According to Taylor, when no one answered, appellant kicked in the door. Taylor described that, after appellant kicked in the door, "[h]e went inside. And then the lady came out with her baby. He was chasing her with a hammer. And then I told her to come next door to me. And she got-all of her kids came next door." (Tr. 66.)

Taylor also testified that though he has seen appellant "hang out" on Ervin's front and back porches, he has never seen appellant go inside of the house, and he believed that, even if Ervin was home, she would not open the door for appellant. (Tr. 72.)

Columbus Police Officer Samuel Streng testified that on May 16, 2013, he responded to Ervin's address on a domestic violence call. When Officer Streng arrived, Ervin was at a next-door neighbor's, and, though she had no visible injuries, Officer Streng described Ervin as "shaking, frightened, visibly scared." (Tr. 82.) Officer

Streng observed that the front door of Ervin's house was "broken down" as if somebody had forced it open.

Additionally, Officer Streng testified that Ervin told him that she had a protection order against appellant and that appellant had struck her in the face. According to Officer Streng, while still at Ervin's, appellant called Ervin on her cell phone.

After the prosecution rested, appellant testified on his own behalf. According to appellant, on May 16, 2013, he was living with Ervin and the children at Ervin's residence and had been for approximately five months. Appellant testified that on May 16, he came home from work and changed clothes because he was going to his friend Erica's house. Appellant testified that, while he was in the kitchen eating, Erica called his cell phone. According to appellant, "[Ervin] got the phone, seeing it, started going ballistic. She knows about Erica. I'm not perfect. I do cheat on a woman. So that was the start of the argument, a pretty bad one." (Tr. 104.)

Because he "got upset," appellant testified that he left the house and walked outside. As he was walking down the street, appellant decided to call Erica, but realized he had forgotten his phone in the house. Therefore, he went back to the house and knocked on the door. Appellant testified that Ervin came to the door, but refused to give appellant his phone and, instead, told him to go to Erica's to use her phone. When asked what happened next, appellant testified:

I kicked the door. Kicked the door, flew open. By this time [Ervin] was standing by the—by the dining room table. I went into the kitchen, got my phone, got my wallet, grabbed my duffle bag with the dirty clothes in it so I could have Erica wash.

As I was coming back through out the kitchen, I could see the door, the door jamb is laying down on the floor with nails sticking out of it. I can't have that around my kids.

So as you come out the kitchen there is a closet right there where we keep our tools, the hammer and everything is right there. So I reached down to get the hammer—opened the closet, reached down to get the hammer out.

\* \* \*

So I went to go over there and as I was going she starts screaming, she's already on the phone. I'm thinking she's joking because I

3

don't really think she's-she is kind of dramatic. So I'm not really thinking she's really on the phone until she starts screaming, like he's going to kill me. He's going to kill me. I'm like this is-put the hammer back in the closet. And I just left. That was that.

(Tr. 105–06.)

Appellant was asked if he tried calling Ervin after this incident, to which appellant testified, "Yeah, I called her and asked what was wrong with her." (Tr. 106–07.) Appellant also testified that he knew there was a protection order in place and that his presence at Ervin's was a violation of the same. When asked to explain why, appellant stated:

I have kids with this woman. She calls me up, she needs me to come over there and do something. For one, we live together, that makes everything easier. Everything–I have to provide for my kids no matter what. I have to provide for my kids. So, I mean, I understand the law and everything like that, but man, I got to * * * take care of my kids flat out so-it's cheaper for me to live in that house and put all my bills in that house and pay all the bills and make sure my kids are all right, that's what I'm going to do. So be it.

(Tr. 109–10.)

After deliberations, the jury returned verdicts of guilty on all indicted charges. After the jury was discharged, a discussion occurred on the record pertaining to the scheduling of a sentencing hearing. However, appellant asked that he be sentenced immediately. The trial court declined to do so and informed appellant that the sentencing hearing would be scheduled at a later date, at which time the following occurred:

[APPELLANT]: I'm telling you, sentence me now. I'm telling you in front of you all right now—

THE COURT: The bond is revoked.

[APPELLANT]:—I am going to kill that bitch when I get the fuck out of here. That's—whether it's 15 years from now, ten years from now, I'm going to kill that bitch the day I get out of prison. Please believe that. Trust me on that.

(Tr. 247.)

4

> At the December 11, 2013 sentencing hearing, after merging the counts for domestic violence and violation of a protection order, appellant was sentenced to an aggregate ten-year term of incarceration.
>
> II. ASSIGNMENT OF ERROR
>
> Appellant timely appealed and brings the following assignment of error for our review:
>
> The trial court erred when it entered judgment against the appellant when the judgment was not supported by the manifest weight of the evidence.

*State v. Pickens*, No. 14AP-24, 2014 WL 4415371, at *1-3 (Ohio App. 10th Dist. Sept. 9, 2014). On September 9, 2014, the appellate court affirmed the judgment of the trial court. *Id.* On March 25, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Pickens*, 142 Ohio St.3d 1412 (Ohio 2015).

Petitioner filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). (ECF No. 6-1, PageID# 230.) He asserted that he had been denied the effective assistance of appellate counsel because his attorney failed to raise on appeal an issue of merger regarding his convictions on aggravated burglary and violation of a protection order, and failure to raise a claim of the denial of the effective assistance of trial counsel for failure to raise the issue at sentencing. (PageID# 231.) On December 16, 2014, the appellate court denied the Rule 26(B) application. (PageID# 256.) On March 25, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (PageID# 276.)

On June 1, 2015, Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He asserts that he was denied the effective assistance of appellate counsel because his attorney failed to raise on appeal a claim that his sentences on aggravated burglary and violation of a protection order should have been merged and that he was denied the effective

5

assistance of trial counsel based on his attorney's failure to raise the issue at sentencing (claims one and two).  It is the position of the Respondent that these claims lack merit.

## Standard of Review

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state-court determinations. The United State Supreme Court described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, ⸺ U.S. ⸺, ⸺, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA ... imposes a highly deferential standard for evaluating state-court rulings, and demands that statecourt decisions be given the benefit of the doubt." (internal quotation marks, citations, and footnote omitted)).

The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

"Under AEDPA, a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)); 28 U.S.C. § 2254(d)(1) (a petitioner

must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law"); 28 U.S.C. § 2254(d)(2) (a petitioner must show that the state court relied on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding"). The United States Court of Appeals for the Sixth Circuit explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id*. at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley,* 706 F.3d at 748–49. The burden of satisfying the standards set forth in § 2254 rests with the petitioner. *Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

"In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable, . . . [t]he state court's application must have been objectively unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith,* 539 U.S. 510, 520–21, (2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409 and *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)); *see also Harrington v. Richter*, 131 S.Ct. at 786 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as "'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering a claim of "unreasonable

7

application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir.2009) ("'[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.'" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc))); *see also Nicely v. Mills*, 521 F. App'x 398, 403 (6th Cir. 2013) (considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Relatedly, in evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a court must review the state court's decision based solely on the record that was before it at the time it rendered its decision. *Pinholster*, 563 U.S. at 181. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id*. at 182.

**Ineffective Assistance of Counsel**

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The standard for demonstrating a claim of ineffective assistance of counsel is composed of two parts:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687. Scrutiny of defense counsel's performance must be "highly deferential." *Id*. at 689.

With respect to the first prong of the *Strickland* test, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. To establish the second prong of the *Strickland* test, prejudice, a Petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Because Petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, should the court determine that Petitioner has failed to satisfy one prong, it need not consider the other. *Id*. at 697.

The *Strickland* test applies to appellate counsel. *Burger v. Kemp*, 483 U.S. 776, 781-82 (1987). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). The Court of Appeals for the Sixth Circuit has identified the following considerations that ought to be taken into account in determining whether counsel on direct appeal performed reasonably competently:

1. Were the omitted issues "significant and obvious?"

2. Was there arguably contrary authority on the omitted issues?

3. Were the omitted issues clearly stronger than those presented?

4. Were the omitted issues objected to at trial?

5. Were the trial court's rulings subject to deference on appeal?

6. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

7. What was appellate counsel's level of experience and expertise?

8. Did the Petitioner and appellate counsel meet and go over possible issues?

9. Is there evidence that counsel reviewed all the facts?

10. Were the omitted issues dealt with in other assignments of error?

11. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999). This list is not exhaustive and need not produce a certain "score." *Id*. at 428.

Petitioner asserts that he was denied the effective assistance of appellate counsel because his attorney failed to raise on appeal a claim that his convictions for aggravated burglary and violation of a protection order should have been merged at sentencing, as committed with one animus, and that defense counsel performed in a constitutionally ineffective manner in failing to raise the issue at sentencing. The state appellate court rejected this claim in relevant part as follows:

> Appellant was indicted on May 24, 2013 for aggravated burglary, a first-degree felony, in violation of R.C. 2911.11, violation of a protection order, a third-degree felony, in violation of R.C. 2919.27, and domestic violence, a fourth-degree felony, in violation of R.C. 2919.25. A jury found appellant guilty of all charges, but the trial court merged the counts of domestic violence and violation of a protection order before sentencing appellant. Appellant's trial counsel did not seek merger of the counts of aggravated burglary and violation of a protection order. The trial court sentenced appellant to an aggregate prison term of ten years.
>
> ***
>
> In appellant's first proposed assignment of error, he claims that appellate counsel performed poorly in failing to argue that the trial court violated R.C. 2941.25 by convicting him of both aggravated burglary and violation of the protection order. We disagree.

10

R.C. 2941.25 speaks to the merger of multiple counts as follows:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, *or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each*, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

(Emphasis added.)

"R.S. 2941.25 prohibits merger and allows cumulative punishment if the offenses: (1) lack a similar import/are of dissimilar import, (2) were committed separately, or (3) were committed with a separate animus as to each. These three bars to merger are disjunctive." *State v. Vargas*, 10th Dist. No. 12AP-692, 2014-Ohio-843, ¶ 16, citing *State v. Bickerstaff*, 10 Ohio St.3d 62 (1984). "A defendant cannot show he is entitled to merger without demonstrating that the offenses result from the 'same conduct' and share a 'similar import.'" *Id*. at ¶ 17, citing *State v. Cochran*, 10th Dist. No. 11AP-408, 2012 –Ohio-5899, ¶ 60.

As is relevant to this case, R.C. 2919.27(A)(1) provides that "[n]o person shall recklessly violate the terms of any * * * protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code." As to the charge of aggravated burglary, R.C. 2911.11(A) defines the offense as follows:

> No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:

> (1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
>
> (2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.

As we noted in *Pickens I*, "[t]he evidence presented at trial established that on January 25, 2012, Ervin and appellant signed a consent agreement and domestic violence civil protection order * * * whereby appellant was required to vacate Ervin's residence, to refrain from initiating contact or having contact with Ervin, and to not be within 500 feet of Ervin even with Ervin's permission." *Id.* at ¶ 21. Accordingly, under the terms of the protection order, appellant committed a violation of R.C. 2919.27(A) as soon as he stepped onto Ervin's porch. Appellant testified that he arrived at Ervin's residence intending only to retrieve his cell phone, but that he kicked in the front door and entered the home when Ervin refused to comply. Thus, appellant's testimony establishes that he committed the two offenses with a separate animus as to each. Additionally, appellant's conduct of kicking in Ervin's door, chasing her with a hammer, and inflicting physical harm was clearly separate from the prior conduct that resulted in the violation of the protection order.

In short, even though it is possible by the same conduct to commit both an aggravated burglary and a violation of a protection order, the record establishes that appellant committed the two offenses separately and with separate animus as to each. Under R.C. 2945.21(B), if the offenses are committed separately or with a separate animus as to each, the offenses will not merge. *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, ¶ 51. This being the case, the trial court did not commit plain error by convicting appellant of both offenses.

For these reasons, appellant has not demonstrated that he had a reasonable probability of success if appellate counsel had raised the issue of merger in the direct appeal. Accordingly, we find that appellant's first proposed assignment of error fails to raise a colorable issue of ineffective assistance of appellate counsel.

Because the offenses of aggravated burglary and violation of a protective order do not merge under the particular facts of this case, it is clear that trial counsel did not err by failing to raise the issue during appellant's sentencing hearing. Consequently, we do not fault appellate counsel for electing not to assert ineffective

> assistance of trial counsel as an assignment of error on appeal.  In short, appellant's second proposed assignment of error fails to demonstrate a colorable issue of ineffective assistance of appellate counsel.
>
> For the foregoing reasons, we find that appellant has not demonstrated a colorable claim of ineffective assistance of appellate counsel, and we deny appellant's application to reopen the appeal.

*Memorandum Decision* (ECF No. 6-1, PageID# 251-55.)

Petitioner argues that the trial court's imposition of separate sentences on his convictions on aggravated burglary and violation of a protection order contradicts the trial court's merger of his sentences on his convictions on violation of a protection order and domestic violence.  In other words, Petitioner maintains that, because the trial court determined that the latter convictions merged for purposes of sentencing, the former convictions must merge as well.  *See Reply and Traverse* (ECF No. 7.)  He complains that the appellate court failed to address this issue.  He also asserts that his convictions on aggravated burglary and violation of a protection order violate the Double Jeopardy Clause.

This Court, however, is not persuaded that Petitioner has overcome the state appellate courts' factual conclusion that he committed two separate acts in view of the evidence presented based on separate conduct by clear and convincing evidence.  28 U.S.C. § 2254(e).  As noted by the state appellate court, Petitioner committed the crime of violating a protection order as soon as he stepped upon the doorstep of Ervin's home.  He then kicked the door down, chased her with a hammer, and slapped her in the face.  These actions constituted separate criminal acts.  The trial court's merger of Petitioner's domestic violence and violation of a protective order convictions at sentencing does not affect this conclusion.  Moreover, this Court defers to the state court's construction of Ohio Revised Code § 2945.25, concluding that the two offenses in question did

not constitute allied offenses of similar import." *See Kilby v. Court of Common Pleas of Montgomery County*, No. 3:14-cv-317, 2015 WL 1729881, at *2 (S.D. Ohio April 13, 2015)(same).

Additionally, Petitioner did not argue in Rule 26(B) proceedings that appellate counsel should have raised the issue in terms of the alleged violation of the Double Jeopardy Clause. *See Motion for Reopening Pursuant to 26(B)* (ECF No. 6-1, PageID# 230-33.)   Arguably, therefore, he has waived such claim for review in these proceedings.

In order to satisfy the exhaustion requirement in habeas corpus, a petitioner must fairly present the substance of each constitutional claim to the state courts as a federal constitutional claim. *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Although the fair presentment requirement is a rule of comity, not jurisdiction, *see Castille v. Peoples*, 489 U.S. 346, 349 (1989); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999), it is rooted in principles of comity and federalism designed to allow state courts the opportunity to correct the State's alleged violation of a federal constitutional right that threatens to invalidate a state criminal judgment. In the Sixth Circuit, a petitioner can satisfy the fair presentment requirement in any one of four ways: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Further, general allegations of the denial of a constitutional right, such as the right to a fair trial or to due process, are insufficient to satisfy the "fair presentment" requirement. *Id*.

Petitioner did not refer to the Double Jeopardy Clause, or to any federal cases or state cases applying federal law in support of his Rule 26(B) application.  He raised the claim solely in terms of the alleged violation of state law in regard to Ohio's statutes on allied offenses of similar import.  *See Motion for Reopening Pursuant to 26(B)* (ECF No. 230, PageID# 230-33.) Further, he has failed to establish cause for his failure to present such federal claim to the state courts.

In any event, Petitioner has failed to establish the denial of the effective assistance of appellate counsel based on his attorney's failure to raise a claim that the trial court's imposition of separate sentences on Petitioner's aggravated burglary and violation of a protection order convictions violated the Double Jeopardy Clause.

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.  The clause has been interpreted as protecting criminal defendants from successive prosecutions for the same offense after acquittal or conviction, as well as from multiple punishments for the same offense.  *Brown v. Ohio*, 432 U.S. 161, 165 (1977).  The traditional test for double jeopardy claims is the "same elements" test set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932) (requiring the court to determine whether each charged offense "requires proof of an additional fact which the other does not").  The *Blockburger* test is designed to deal with the situation where closely connected conduct results in multiple charges under separate statutes.  Under *Blockburger*, the critical question is whether the multiple charges in reality constitute the same offense.  Thus, the *Blockburger* test focuses on whether the statutory elements of the two crimes charged are

duplicative. If the elements of the two statutes are substantially the same, then double jeopardy is violated by charging the defendant under both.

However, "the Double Jeopardy Clause does not prohibit multiple punishments for the same conduct when the legislature intends to impose cumulative penalties." *Dothard v. MacLaren*, No. 13-15217, 2015 WL 470585, at *7 (E.D. Mich. Feb. 3, 2015) (citing *Missouri v. Hunter*, 459 U.S. 359, 368–69 (1983)). "Federal courts 'must accept the state court's interpretation of the legislative intent for the imposition of multiple punishments[.]'" *Id.* (citing *Brimmage v. Sumner*, 793 F.2d 1014, 1015 (6th Cir. 1986); *White v. Howes*, 586 F.3d 1025, 1028 (6th Cir. 2009); *Galvan v. Prelesnik*, No. 13–1695, 2014 WL 4958078 (6th Cir. Oct. 3, 2014)).

> [I]n deciding a habeas petitioner's Double Jeopardy claim, a federal habeas court is bound by a state appellate court's interpretation of different state statutes to permit a defendant who is convicted of multiple offenses to be punished for both offenses. *See Palmer v. Haviland*, 273 Fed. Appx. at 486-87. Once a state court has determined that the state legislature intended cumulative punishments for separate offenses, a federal habeas court must defer to that determination. *See Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).

*Lumpkin v. Romanowski*, No. 5:08-CV-10304, 2010 WL 1222691, at *6 (E.D. Mich. March 25, 2010).

Here, Ohio's statute on violation of a protection order, O.R.C. § 2919.27(A)(1), and aggravated burglary, O.R.C. § 2911.11(A), plainly satisfy the *Blockburger* test. O.R.C. § 2919.27(A)(1) prohibits any person from recklessly violating the terms of a protection order. Aggravated burglary, under O.R.C. § 2911.11(A) prohibits any person "by force, stealth, or deception" from trespassing in an occupied structure where another person is present, with purpose to commit therein any criminal offense if the offender "inflicts, or attempts or threatens

to inflict physical harm on another," or "has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control."  Further, as discussed, the facts reflect that Petitioner's convictions on these offenses result from his commission of two separate criminal acts.

## Recommended Disposition

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

 s/ *Elizabeth A. Preston Deavers*
Elizabeth A. Preston Deavers
United States Magistrate Judge